**CSD 1001A** [07/01/18]

Name, Address, Telephone No. & I.D. No.

SULLIVAN HILL REZ & ENGEL, APLC
  James P. Hill, SBN 90478
  Christopher V. Hawkins, SBN 222961
600 B Street, 17th Floor   San Diego, CA 92101
Telephone: (619) 233-4100 / Fax Number: (619) 231-4372
Attorneys for Debtor and Debtor In Possession, Ingenu, Inc.

**Order Entered on**
December 23, 2020
**by Clerk U.S. Bankruptcy Court**
**Southern District of California**

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re
INGENU, INC.

                                                                    Debtor.

BANKRUPTCY NO. 20-03779-LT11

Date of Hearing: December 15, 2020
Time of Hearing: 9:00 a.m.
Name of Judge: Hon. Laura S. Taylor

# AMENDED ORDER
## CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

The court orders as set forth on the continuation pages attached and numbered __2__ through __24__ with

exhibits, if any, for a total of __24__ pages.  Motion/Application Docket Entry No. __138__ .

//

//

//

//

//

//

//

DATED:

        December 23, 2020

Judge, United States Bankruptcy Court

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                           CASE NO.: 20-03779-LT11

This matter came before the Court for hearing (the "Confirmation Hearing") on December 15, 2020 for Confirmation of the *Chapter 11 Plan of Reorganization for the Debtor* dated as of October 30, 2020 [Docket No. 138] (as subsequently supplemented, amended or modified, including by the Plan Supplement and the Plan Modification, the "Plan"), filed by Ingenu, Inc. (the "Debtor").[1]   Appearances at the Confirmation Hearing were as noted on the record.

The Court having considered:

(1) the Order (A) Approving Disclosure Statement; (B) Confirming Schedule for Hearing on Confirmation of the Debtor's Chapter 11 Plan of Reorganization; (C) Approving Solicitation Packages and Procedures for the Distribution of the Disclosure Statement; (D) Approving Form of Ballots; and (E) Establishing Voting Deadlines and Procedures for Tabulation of Votes, entered on November 2, 2020 [Docket No. 142] (the "Disclosure Statement Order");

(2) the Plan [Docket No. 138];

the proofs of service of the Plan and related materials directed by the Court to be provided to creditors and parties-in-interest in accordance with the terms of the Disclosure Statement Order;

(3) Trilliant Networks (Canada) Inc.'s Objection to Confirmation of Debtor's Proposed Chapter 11 Plan [Docket No. 157];

(4) Summary of Balloting on Chapter 11 Plan Dated October 30, 2020 [Docket No. 179];

(5) Declaration of Laurel Leigh Dinkins re Ballots Received for the Debtor's Chapter 11 Plan of Reorganization [Docket No. 180];

(6) Debtor's Reply to Trilliant's Objection to Confirmation of Debtor's Proposed Chapter 11 Plan [Docket No. 184];

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                    CASE NO.: 20-03779-LT11

(7) Memorandum of Points and Authorities in Support of Confirmation of Debtor's Chapter 11 Plan [Docket No. 188]; and

(8) all declarations, exhibits, evidentiary objections and other pleadings filed in connection with any of the foregoing;

the Court having considered the offer of proof made and other evidence introduced at the Confirmation Hearing and noted on the record, if any; the records and files in this Bankruptcy Case; the Court having issued a tentative ruling on confirmation of the Plan [Docket No. 204], which is incorporated herein as the Court's findings of fact and conclusions of law, as if set forth at length, as and to the extent modified herein; the Court having entered a related order on the Debtor's Motion to Determine Secured Status of Junior Claims [Docket No. 147]; notice appearing proper; and good cause appearing therefore, the Court makes the following findings of facts and conclusions of law:

I.      **FINDINGS OF FACT**

    A.      **Jurisdiction and Venue**

On July 27, 2020 (the "Petition Date"), the Debtor commenced its Chapter 11 case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  The Debtor was and is qualified to be a debtor under section 109 of the Bankruptcy Code.  Venue in the Southern District of California was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    B.      **Compliance with Section 1129 of the Bankruptcy Code**

        1.      **Section 1129(a)(1)–Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

            a.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation,

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                              CASE NO.: 20-03779-LT11

sections 1122 and 1123 of the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates separate Classes of Claims and Interests (other than Administrative Expense Claims, Priority Tax Claims, and the DIP Loan Claim).  As required by section 1122(a) of the Bankruptcy Code, each such Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

       b.       Pursuant to section 1123(a)(2) and (3) of the Bankruptcy Code, Article IV of the Plan specifies all Claims that are Unimpaired under the Plan and specifies the treatment of all Claims and Interests that are Impaired under the Plan.  The Plan complies with this section.

       c.       Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article V of the Plan provides the same treatment for each Claim or Interest within a particular Class.  The Plan complies with this section.

       d.       Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for the Plan's implementation, including (i) the vesting of specified assets in the Reorganized Debtor, (ii) the preservation of specified causes of action, (iii) the continued existence and operations of the Reorganized Debtor, (iv) the Debt-For-Equity Exchange described in the Plan, and (v) the provision of the Exit Facility.  The Plan complies with this section.

       e.       The Debtor's corporate charter includes all information required under section 1123(a)(6) of the Bankruptcy Code.  The Plan complies with this section.

       f.       As required by section 1123(a)(7) of the Bankruptcy Code, the manner in which the Officers and members of the Board of Directors will be chosen is consistent with the interests of creditors and equity security holders and with public policy.  The Plan complies with this section.

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                      CASE NO.: 20-03779-LT11

2.      **Section 1129(a)(2)–Compliance by the Debtor with Applicable Provisions of the Bankruptcy Code**

The Debtor, as the proponent of the Plan, complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019. The Disclosure Statement and the procedures by which the Ballots were solicited were fair, properly conducted and in accordance with section 1125(b) of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The Plan complies with these sections.

3.      **Section 1129(a)(3)–Proposal of the Plan in Good Faith**

The Debtor proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Debtor's good faith is evident from the facts and the record of the Chapter 11 Case, the Disclosure Statement, the hearing on the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Case. The Plan has been proposed with the legitimate purpose of reorganizing the business affairs of the Debtor and maximizing the returns available to creditors of the Debtor. The Plan itself and the process leading to its formulation provide independent evidence of the Debtor's and such other parties' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests. Consistent with the overriding purpose of Chapter 11, the Debtor filed the Chapter 11 Case with the belief that the Debtor was in need of restructuring and the Plan was negotiated and proposed with the intention of maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

4.      **Section 1129(a)(4)–Bankruptcy Court Approval of Certain Payments as Reasonable**

Pursuant to section 1129(a)(4) of the Bankruptcy Code, any payments made by the Debtor to Professionals for services or for costs and expenses in, or in connection with, this Chapter 11

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                                   CASE NO.: 20-03779-LT11

Case, have been or will be disclosed to the Bankruptcy Court in applications for compensation of fees and reimbursement of expenses in accordance with the Bankruptcy Code and prior orders of this Court. The Plan complies with the requirements of this section.

**5.      Section 1129(a)(5)–Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the selection process for the initial Officers and member of the Board of Directors of the Reorganized Debtor is disclosed in the Plan. The appointment or continuation of the proposed Officers and members of the Board of Directors is consistent with the interests of creditors and equity security holders and with public policy.  The Plan complies with the requirements of this section.

**6.      Section 1129(a)(6)–Approval of Rate Change by Regulatory Commission**

The Debtor's business does not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after Confirmation.  Accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable.

**7.      Section 1129(a)(7)–Best Interests of Creditors**

With respect to each Impaired Class of Claims and Interests, each holder of an Allowed Claim or Interest in each such Impaired Class has accepted or is deemed to have accepted the Plan or, as demonstrated by the liquidation analysis included as Exhibit D to the Disclosure Statement [Docket No. 138], will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.  Accordingly, section 1129(a)(7) is satisfied.

**8.      Section 1129(a)(8)–Acceptance of the Plan by Each Impaired Class**

Pursuant to sections 1124, 1126 and 1129(a)(8) of the Bankruptcy Code, Classes 1 and 9 are Unimpaired under the Plan and, accordingly, pursuant to section 1125(f) of the Bankruptcy Code, Classes 1 and 9 are conclusively deemed to have accepted the Plan.  Further, the Plan

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                         CASE NO.: 20-03779-LT11

provides that holders of Interests in Class 12 will not receive or retain any property on account of such Interests and, therefore, are conclusively deemed to have rejected the Plan. Accordingly, holders of Interests in Class 12 are not entitled to vote on the Plan. Although the Plan does not comply with section 1129(a)(8) with respect to Classes 5–8 and 10–12, the Plan is confirmable because, as more fully set forth in section I.B.17 below, the Plan does not discriminate unfairly and is fair and equitable with respect to Class 12, thereby satisfying section 1129(b) of the Bankruptcy Code with respect to such Class.

### 9.    Section 1129(a)(9)–Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

The Plan provides for treatment of Administrative Expense Claims, Priority Claims and Priority Tax Claims in the manner required by section 1129(a)(9) of the Bankruptcy Code. Thus, the Plan complies with this section.

### 10.    Section 1129(a)(10)–Acceptance by at Least One Impaired Class

As required by section 1129(a)(10) of the Bankruptcy Code and as indicated in the Ballot Summary, at least one Impaired Class of Claims has accepted the Plan excluding votes cast by any insider. As indicated in the Ballot Summary, Classes 2, 3, and 4 voted to accept the Plan. As a result, the Plan satisfies this section.

### 11.    Section 1129(a)(11)–Feasibility of the Plan

The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. While it is not possible to predict with certainty Debtor's financial future, (a) confirmation of the Plan is not likely to be followed by the liquidation of, or the need for further financial reorganization of Debtor, the Reorganized Debtor or any successor to the Reorganized Debtor under the Plan, and (b) upon the Effective Date and thereafter, as applicable, the Reorganized Debtor is expected to have sufficient cash flow and capital resources to pay its liabilities as they become due, to satisfy the capital needs for the conduct of its business and meet its financial obligations under the Plan, all as demonstrated by the record of the Confirmation Hearing and by the Plan, the Disclosure Statement, including Exhibit C thereto (Feasibility Projections), and the Declaration of Alvaro

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                    CASE NO.: 20-03779-LT11

Gazzolo supporting same (subject to the limitations and qualifications set forth in such documents). The Plan therefore satisfies section 1129(a)(11) of the Bankruptcy Code.

### 12.    Section 1129(a)(12)–Payment of Bankruptcy Fees

In accordance with section 1129(a)(12) of the Bankruptcy Code, the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 on the Effective Date and until the liability for paying such fees ends under 28 U.S.C. § 1930(a)(6). The Plan complies with this section.

### 13.    Section 1129(a)(13)–Retiree Benefits

The Debtor has no retiree benefits obligations. Accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable.

### 14.    Section 1129(a)(14)–Domestic Support Obligations

The Debtor is a corporation and, therefore, section 1129(a)(14) of the Bankruptcy Code does not apply.

### 15.    Section 1129(a)(15)–Individual Debtor Income Test

The Debtor is a corporation and, therefore, section 1129(a)(15) of the Bankruptcy Code does not apply.

### 16.    Section 1129(a)(16)–Transfers of Property

Section 1129(a)(16) of the Bankruptcy Code requires that any transfers of property under a plan be made in accordance with applicable non-bankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business or commercial corporation or trust. The Debtor does not propose to transfer property under the Plan and so section 1129(a)(16) of the Bankruptcy Code does not apply. As a result, the Plan complies with this section.

### 17.    Section 1129(b)–Confirmation of the Plan over Nonacceptance of Impaired Classes

Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan is confirmable notwithstanding the fact that Classes 5–8 and 10–12 are Impaired and have not accepted the Plan. Other than the requirement in section 1129(a)(8) of the Bankruptcy Code that all Classes be unimpaired or accept the Plan, all of the requirements of section 1129(a) of the Bankruptcy Code

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                                 CASE NO.: 20-03779-LT11

have been met.  The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 5–8 and 10–12.  The Plan is fair and equitable with regard to Classes 5–8 and 10–12 because no holders of Claims or Interests junior to them are entitled to receive anything under the Plan.  Accordingly, the Plan is fair and equitable and satisfies section 1129(b) of the Bankruptcy Code.

### 18.    Section 1129(d)–Principal Purpose of Plan

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (the "Securities Act").  Therefore, section 1129(d) of the Bankruptcy Code is satisfied.

### C.    The Exit Facility

The Exit Facility, and any security agreements and similar instruments with respect to collateral securing any interest or property in connection with the Exit Facility and all other documents or instruments entered into in connection with the Exit Facility (collectively, the "Exit Facility Documents"), including, without limitation, the documents contained in the Plan Supplement, is approved.  The Exit Facility is an essential element of the Plan and entry into and consummation of the transactions contemplated by the Exit Facility is in the best interest of the Debtor, the Estate, and holders of Claims and Interests and is approved in all respects.  The Debtor has exercised reasonable business judgment in connection with the Exit Facility and has provided sufficient and adequate notice thereof.  The proposed terms thereunder have been negotiated in good faith and at arms' length, are supported by reasonably equivalent value and fair consideration and are fair and reasonable.  The Exit Facility Documents shall each, subject to the occurrence of the Effective Date, be valid, binding and enforceable against the Debtor and the Reorganized Debtor.  The Debtor or Reorganized Debtor, as applicable, is authorized, without further notice to or action, order or approval of this Court or any other Person, to enter into and fully perform their obligations under the Exit Facility consistent with the Exit Facility Documents, and execute and deliver all agreements, documents, and instruments relating to the Exit Facility and to incur and pay all fees and expenses and all other obligations required to be paid in

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                          CASE NO.: 20-03779-LT11

connection therewith as and when they come due under the terms of the Exit Facility Documents. Upon execution and delivery, the Exit Facility Documents shall become effective in accordance with their respective terms and conditions. The consideration granted pursuant to or in connection with the Exit Facility or the Exit Facility Documents are or will be (as the case may be) and are hereby deemed to be granted in good faith, for good and valuable consideration, and for legitimate business purposes as an inducement to the Exit Facility Lender to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance or recharacterization and shall not subject to the Exit Facility Lender to any liability by reason of incurrence of such obligation or grant of such liens, guarantees, or security interests under applicable federal or state law, including, but not limited to, successor or transferee liability.

### D.    Settlements and Releases

The releases and injunction set forth in Section 13.3 of the Plan are fair and reasonable and in the best interest of the Estate. As demonstrated by the Gazzolo Declaration, the benefits received by the Estate as a result of the releases constitute fair and reasonable value for the releases set forth in Section 13.3 of the Plan. The releases and injunctions set forth in Section 13.3 of the Plan, including the releases of non-debtor parties pursuant to (a) the general releases by holders of Claims in Section 13.3(a) of the Plan, and (b) the releases of Estate claims and Causes of Actions in Section 13.3(b) of the Plan, are, individually and collectively, (i) integral to the settlements that form the basis of the Plan, (ii) necessary for the reorganization of the Debtor, and (iii) supported by reasonable consideration. In light of all the circumstances, the releases and injunction set forth in Section 13.3 of the Plan are fair to the releasing parties and in the best interest of the Estate, constitute a good faith compromise and settlement pursuant to Rule 9019 of Federal Rules of Bankruptcy Procedure, and are hereby approved.

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                    CASE NO.: 20-03779-LT11

## II.    CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Debtor was and is qualified to be a debtor under section 109 of the Bankruptcy Code. Venue in the Southern District of California was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.    Exemptions from Securities Laws

1.    Pursuant to section 1125(d) of the Bankruptcy Code, the Debtor's issuance and distribution of the shares of common stock of the Reorganized Debtor to be issued on the Effective Date (the "New Common Stock") pursuant to the Plan and any other securities issuable pursuant to the Plan are not and will not be governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation or acceptance of a plan of reorganization or the offer, issuance, sale or purchase of securities. Accordingly, the Debtor, the Reorganized Debtor and their respective directors, officers, employees, agents and professionals (acting in such capacity) are entitled to the protection of section 1125(e) of the Bankruptcy Code.

2.    Pursuant to section 1145(a)(1) of the Bankruptcy Code, the offering, issuance and distribution of New Common Stock pursuant to the Plan and any other securities issuable pursuant to the Plan shall be exempt from section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution or sale of securities.

3.    Pursuant to and to the fullest extent permitted by section 1145 of the Bankruptcy Code, the resale of New Common Stock issued pursuant to the Plan and any other securities issuable pursuant to the Plan shall be exempt from section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution or sale of securities.

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                          CASE NO.: 20-03779-LT11

### C.  Compliance with Section 1129 of the Bankruptcy Code

As set forth in Section I.B. above, the Plan complies with the applicable requirements of section 1129 of the Bankruptcy Code.

### D.  Approval of Settlements, Compromises, Releases and Related Provisions

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), all settlements, compromises, releases, indemnifications, injunctions, and exculpations set forth in the Plan, including, without limitation, the settlements, compromises, releases, indemnifications, injunctions and exculpations set forth in Sections 13.3 of the Plan and implemented by this Confirmation Order, are hereby approved as fair, equitable, reasonable and in the best interests of the Debtor, the Reorganized Debtor, and the Estate.  The Plan complies with this section.

### E.  Assumptions and Rejections of Executory Contracts and Unexpired Leases

Each pre- or post-Effective Date assumption or rejection of an Executory Contract or Unexpired Lease pursuant to Article IX or other provisions of the Plan shall be legal, valid and binding upon the Debtor or Reorganized Debtor and all non-debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption, assumption and assignment or rejection had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

## III.  ORDER

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT:**

### A.  Confirmation of the Plan

The Plan and each of its provisions (whether or not specifically approved herein) is hereby APPROVED and CONFIRMED in all respects pursuant to section 1129 of the Bankruptcy Code, as modified herein; provided, however, that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. All objections and responses to, and statements regarding, the Plan, to the extent that they have

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                                  CASE NO.: 20-03779-LT11

not been withdrawn, waived or settled prior to entry of this Confirmation Order or are not cured by the relief granted herein, are hereby expressly overruled.

## B.    Effects of Confirmation

### 1.    Successors and Assigns

The terms of this Confirmation Order are binding on the Debtor, the Reorganized Debtor, any and all holders of Claims and Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have acted or rejected the Plan), any and all non-debtor parties to Executory Contracts and Unexpired Leases with the Debtor and any and all entities who are parties to or are subject to the settlements, compromises, releases, discharges and injunctions set forth in the Plan and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

### 2.    Continued Corporate Existence; Vesting of Assets

As of the Effective Date, the Reorganized Debtor shall exist as a corporate entity in accordance with applicable law pursuant to the Debtor's Amended Certificate of Incorporation and Bylaws.  Except as otherwise provided in the Plan, on and after the Effective Date, all property of the Estate, including all claims, rights and Causes of Action shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, and Interests.  On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of Property and compromise or settle any Claims without supervision of or approval of the Bankruptcy Court free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or this Confirmation Order.  Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for professional fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                              CASE NO.: 20-03779-LT11

### 3.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan (including the Exit Facility Documents), on the Effective Date and upon payment as provided in the Plan, all mortgages, deeds of trust, Liens or other security interests against the property of the Estate vesting in the Reorganized Debtor will be fully released and discharged.  As of the Effective Date, the Reorganized Debtor shall be authorized to file or record on behalf of creditors such Uniform Commercial Code termination statements, real property releases or reconveyances, or other documents or instruments as may be necessary to implement the provisions of Section 6.4 of the Plan.  This Court shall retain jurisdiction, both before and after the Effective Date, to enforce Section 6.4 of the Plan and this Section III.B.3 including, without limitation, for any proceeding to hold a non-debtor party in contempt for failing to release Liens or other encumbrances in accordance with the Plan.

### 4.    Executory Contracts and Unexpired Leases

####     a.    Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided in this Confirmation Order, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all remaining Executory Contracts and Unexpired Leases that exist between the Debtor and any Person shall be deemed rejected as of the Effective Date, except for any Executory Contract or Unexpired Lease (i) that has been assumed, assumed and assigned or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption, assumption and assignment or rejection has been filed (including a motion seeking an order authorizing, but not directing, the Debtor to assume, assume and assign, or reject such Executory Contract or Unexpired Lease) prior to the Effective Date, (iii) agreed to be excluded from such rejection pursuant to stipulation with the Debtor or the Reorganized Debtor, or (iv) that is identified on the Plan Supplement as being excluded from such rejection.  Any claims arising from the rejection of an Executory Contract or Unexpired Lease ("Rejection Claims") shall be classified in Class 11 under the Plan.  For the

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                                    CASE NO.: 20-03779-LT11

avoidance of doubt, the foregoing shall apply to the Trilliant Contract to the extent a determination is made that, contrary to the Debtor's position, the Debtor's termination of the Trilliant Contract prior to the Petition Date was not effective, in which case the Trilliant Contract shall either (1) be deemed rejected pursuant to the Plan, and Trilliant may assert continued rights in the Debtor's intellectual property under section 365(n) of the Bankruptcy Code, or (2) be the subject of continued litigation regarding whether the Trilliant Contract is subject to termination as a result of pre-petition and continuing breaches, and the consequences of such termination. For further avoidance of doubt, (a) the Debtor asserts that it effectively terminated the Trilliant Contract prior to the Petition Date based on certain breaches by Trilliant (the "Pre-Petition Termination"), and therefore, the Trilliant Contract is not an Executory Contract; (b) Trilliant contends that the purported Pre-Petition Termination was ineffective as the Trilliant Contract required a 60-day notice and cure period; (c) the Debtor contends that such notice and cure period was inapplicable as certain of Trilliant's breaches were and are incurable; (d) Trilliant disputes that such notice and cure period was inapplicable because certain of Trilliant's breaches were allegedly incurable; (e) Trilliant commenced Adversary Proceeding No. 20-90108 seeking a judicial determination of this and other related issues; (f) the Debtor reserves the right to assert that existing breaches, and/or other and further breaches, give rise to the right to terminate the Trilliant Contract even if the Pre-Petition Termination was not effective (the "Post-Petition Termination"); and (g) Trilliant reserves all rights to dispute such purported Post-Petition Termination.

> b.    Bar Date for Filing Rejection Claims

A Proof of Claim asserting a Rejection Claim shall be filed with this Court on or before the fortieth (40th) day after the Effective Date (or, in the case of the Trilliant Contract, 40 days after entry of a final order authorizing the rejection of the Trilliant Contract) or be forever barred from assertion of any Rejection Claim against and payment from the Reorganized Debtor.

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                          CASE NO.: 20-03779-LT11

### 5.    Preservation of Causes of Action

#### a.    Vesting of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all claims and Causes of Action held by the Debtor and/or the Estate, whether arising before or after the Petition Date. All such claims and Causes of Action, along with all rights, interests and defenses related thereto, shall vest with the Reorganized Debtor.

#### b.    Reservation of Causes of Action

Unless any Cause of Action against a Person is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, and except as to the Pre-Petition Senior Lenders, the Debtor and the Reorganized Debtor specifically reserve all Causes of Action, for later adjudication. Therefore, no preclusion doctrine, estoppel (judicial, equitable or otherwise) or laches shall apply to any of the Causes of Action upon, after or as a consequence of the confirmation, the Effective Date or consummation of the Plan. Without limiting the foregoing, the Causes of Action reserved under the Plan include the Causes of Action disclosed in the Debtor's Schedules and those described in Section 13(b) of the Plan. In addition, the Causes of Action reserved under the Plan include any Causes of Action regarding any transfers disclosed in the Debtor's Statement of Financial Affairs ("SOFA"), including Avoidance Actions. Such reservation is hereby approved and nothing in this Order shall prevent or preclude the Debtor from asserting any such Causes of Action. Nothing in this Order shall preclude any creditor or party in interest from raising as a defense to a Cause of Action asserted by the Reorganized Debtor any pre-confirmation claim or right to payment, even if such claim or right to payment was not asserted in a timely filed proof of claim.

#### c.    Preservation of Defensive Use of Causes of Action

Whether or not any Cause of Action is pursued or abandoned, Debtor and the Reorganized Debtor reserve their rights to use any such Cause of Action defensively, including for the

Signed by Judge Laura Stuart Taylor December 23, 2020

CSD 1001A [07/01/18]

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                          CASE NO.: 20-03779-LT11

purposes of asserting a setoff or recoupment, or to object to all or part of any Claim pursuant to section 502(d) of the Bankruptcy Code or otherwise.

   d.  Discretion to Pursue or Settle

  The Reorganized Debtor shall have discretion to pursue or not to pursue, to settle or not to settle, to try or not to try, and/or to appeal or not to appeal all Causes of Action.

   e.  Notwithstanding anything to the contrary in this section B, the following nonmaterial modification is made to the Plan: In the event that the Reorganized Debtor prosecutes any Cause of Action and receives a monetary recovery from it, the Reorganized Debtor will pay the first $2,700 in net proceeds to Trilliant on account of Trilliant's claims, and for the avoidance of doubt, Trilliant's objection regarding Causes of Action with respect to the Plan's satisfaction of Section 1129(a)(7) of the Bankruptcy Code is specifically overruled.  For purposes of this paragraph, "net proceeds" shall mean a monetary recovery actually received by the Reorganized Debtor net of any fees, expenses or other costs associated with such recovery.

  **C.**  <u>**Actions in Furtherance of the Plan**</u>

  Pursuant to section 1142(b) of the Bankruptcy Code and applicable state law, no action of the boards of directors of the Debtor or the Reorganized Debtor will be required to authorize them (or any of their officers, employees or agents acting on their behalf) to effectuate and carry out the Plan and all orders of the Court relating thereto, to consummate the transactions contemplated by the Plan and this Confirmation Order or to take or do any other action or thing contemplated by the Plan, this Confirmation Order or such orders as may be necessary or appropriate to fully effectuate the intents and purposes thereof, and all such actions and things hereby are or will be deemed to have been taken or done with like effect as if they had been authorized and approved by unanimous actions of the boards of directors of Debtor and the Reorganized Debtor.

  **D.**  <u>**Releases**</u>

  The releases contained in Section 13.3 of the Plan (as attached) are approved in all respects. As further provided in Section III.G.2 below, the commencement or prosecution by any entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages,

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                                    CASE NO.: 20-03779-LT11

demands, debts, rights, causes of action or liabilities released pursuant to Section 13.3 of the Plan are permanently enjoined.

      E.    **Approval of the Exit Facility**

      The Debtor's entry into the Exit Facility and the Exit Facility Documents is hereby approved. On the Effective Date, the Reorganized Debtor is authorized to enter into the Exit Facility and complete the transactions contemplated by the Exit Facility in order to provide funding to the Reorganized Debtor's business operations, and the Debtor shall be authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility, without further notice to or order of the Court, act, or action under applicable law, regulation, rule or vote, consent, authorization, or approval of any person. Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Court or by the shareholders, directors, members or partners of any of the Reorganized Debtor, the Reorganized Debtor is authorized to enter into and implement the Exit Facility and to execute and deliver the Exit Facility Documents and to take all other actions and execute, deliver, record and file all such agreements, documents, instruments, financing statements, mortgages, releases, applications, reports and any modifications thereto in connection with the consummation of the transactions contemplated by the Exit Facility. Each of the Exit Facility Documents, once executed, shall constitute a legal, valid, binding, and authorized obligation of the respective parties thereto, enforceable in accordance with its terms. Notwithstanding anything to the contrary in the Disclosure Statement, Plan, Plan Supplement, or this Confirmation Order, or applicable non-bankruptcy law, upon execution and delivery, subject to the occurrence of the Effective Date, the Exit Facility Documents shall create valid, perfected, and first priority Liens on, and security interests in, all of the Debtor's and Reorganized Debtor's assets which secure the Exit Facility. This Confirmation Order shall be sufficient and conclusive evidence of the first priority, perfection, and validity of such Liens, pledges, and security interests without the need for any further action, including, without limitation, the filing or recording of any financing statements or other documents that may otherwise be required under federal or state law in any jurisdiction.

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                    CASE NO.: 20-03779-LT11

### F.      New Common Stock

On the Effective Date, the Reorganized Debtor shall issue or cause to be issued the New Common Stock for Distribution to the Pre-Petition Second Lien Lender in accordance with the terms of the Plan and the organizational documents of the Reorganized Debtor without the need for any further corporate or shareholder action.  Pursuant to section 1142(b) of the Bankruptcy Code and without further action by the Bankruptcy Court or by the shareholders or directors of the Reorganized Debtor, the directors and officers of the Reorganized Debtor are authorized to perform all tasks necessary and to execute and deliver all documents, agreements, and instruments necessary or appropriate to issue the New Common Stock.  To the maximum extent provided by section 1145 of the Bankruptcy Code and/or applicable non-bankruptcy law, the issuance of the New Common Stock pursuant to the Plan, and any other issuance of securities of the Debtor or the Reorganized Debtor pursuant to the Plan, will be exempt from section 5 of the Securities Act and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.  The issuance of the New Common Stock to the Pre-Petition Second Lien Lender is or was in exchange for the full and complete release of Claims against the Debtor within the meaning of section 1145(a)(1) of the Bankruptcy Code.

### G.      Discharge and Injunction

#### 1.      Discharge of the Debtor

Pursuant to section 1141(d) of the Bankruptcy Code and, except as otherwise specifically provided in the Plan or in this Confirmation Order, the rights afforded and the payments and distributions to be made and the treatment under the Plan shall be in complete exchange for, and in full and unconditional settlement, satisfaction, discharge, and release of any and all existing debts and Claims and termination of all Interests of any kind, nature, or description whatsoever against or in the Debtor, the Reorganized Debtor, their property, the Debtor's assets, or the Estate, and shall effect a full and complete release, discharge, and termination of all Liens, security interests, or other claims, interests, or encumbrances upon all of the Debtor's assets and property.

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                    CASE NO.: 20-03779-LT11

### 2.  Injunctions

Except as otherwise provided in the Plan or the Confirmation Order, all holders of Claims and Interests arising prior to the Effective Date shall be permanently barred and enjoined from asserting against the Reorganized Debtor or the Debtor, or their successors or property, or the Debtor's assets, any of the following actions on account of such claim or interest: (i) commencing or continuing in any manner any action or other proceeding on account of such claim against or interest in the Reorganized Debtor, the Debtor, or the property to be distributed under the terms of the plan, other than to enforce any right to distribution with respect to such property under the Plan and/or to litigate to conclusion, including any appeals, any objection to a Claim or Interest; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Reorganized Debtor, the Debtor or any of the property to be distributed under the terms of the Plan, other than as permitted under sub-paragraph (i) above; (iii) creating, perfecting, or enforcing any lien or encumbrance against property of the Reorganized Debtor, the Debtor, or any property to be distributed under the terms of the Plan; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Reorganized Debtor, their assets or any other property of the Debtor, the Reorganized Debtor, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan and the Confirmation Order.  For the avoidance of doubt, the foregoing does not preclude continued litigation in Adversary Proceeding No. 20-90108 between the Debtor and Trilliant.  The foregoing discharge, release and injunction are an integral part of the Plan and are essential to its implementation.  The Debtor and the Reorganized Debtor shall have the right to independently seek the enforcement of the discharge, release and injunction set forth in Articles XI and XIII of the Plan.

Signed by Judge Laura Stuart Taylor December 23, 2020

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                              CASE NO.: 20-03779-LT11

### 3.    Term of Injunctions or Stays

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date, at which time they are replaced with the injunction set forth in Section III.G.2 above and in Sections 11.2 and 13.3(c) of the Plan.

### H.    Substantial Consummation

The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

### I.    Payment of Statutory Fees

On the Effective Date, the Debtor shall pay any outstanding fees payable pursuant to 28 U.S.C. § 1930.  After the Effective Date, the Reorganized Debtor shall the fees due under 28 U.S.C. § 1930(a)(6), which obligation shall end upon entry of a final decree or other order closing the Chapter 11 Case.

### J.    Reference to and Validity and Enforceability of Plan Provisions

The failure to reference any particular provision in the Plan in this Confirmation Order shall have no effect on the binding effect, enforceability or legality of such provision and such provision shall have the same binding effect, enforceability or legality as every other provision of the Plan.  Each term and provision of the Plan, as modified or interpreted by the Court, is valid and enforceable pursuant to its terms.

### K.    Waiver of 14-Day Stay

Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and not subject to any stay.

### L.    Notice of Entry of Confirmation Order

Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtor is hereby directed to serve a notice of the entry of this Confirmation Order, and if it has occurred, the Effective Date,

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                                   CASE NO.: 20-03779-LT11

and incorporated herein by reference (the "Confirmation Notice"), on all parties that received notice of the Confirmation Hearing, no later than ten (10) Business Days after the Confirmation Date; provided, however, that Debtor shall be obligated to serve the Confirmation Notice only on the record holders of Claims and Interests.

**M.    Certain Texas Taxing Entities**

Certain taxing entities in the State of Texas, consisting of City of Garland, Garland Independent School District, City of Azle, Plano Independent School District, Dickinson ISD, Fort Bend ISD, Santa Fe ISD, and Kendall Central Appraisal District ("Certain Texas Taxing Entities"), have asserted claims in the aggregate amount of $10,291.93 (the "Texas Tax Claims"). Notwithstanding any other provision of the Plan or this Confirmation Order, to the extent any Texas Tax Claim is an Allowed Claim, the applicable Certain Texas Taxing Entity holding such Allowed Claim shall receive the treatment described in this paragraph on account of such Allowed Claim. Such Certain Texas Taxing Entity shall receive interest until payment in full at the state statutory rate pursuant to 11 U.S.C. Sections 506(b), 511 and 1129. All parties' rights with respect to any such Claims for interest are reserved in accordance with the paragraph below. The Debtor shall commence equal monthly payments to the holder of such Allowed Claim on the final day of the first full quarter after the Effective Date. These payments will continue over a period of months calculated to pay such Allowed Claim in full no later than the fifth (5th) anniversary of the Petition Date. Any such Certain Texas Taxing Entity holding an Allowed Texas Tax Claims shall retain its Liens securing such Allowed Claim, to the extent such liens are valid and enforceable, against the applicable property of the Debtor until such time as such Allowed Claim is paid in full. In the event that the Debtors abandon any property securing an Allowed Texas Tax Claim, the Debtor shall provide notice of such abandonment and of the occurrence of the Effective Date to the affected Texas Taxing Entity holding such Claim. Nothing in the Plan or this Confirmation Order shall be deemed as an admission as to the validity, priority or amount of any Lien or Claim asserted by the Certain Texas Taxing Entities and all parties' rights with respect to thereto are fully reserved and the foregoing treatment shall not entitle any

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                              CASE NO.: 20-03779-LT11

creditor other than the Certain Texas Taxing Entities on account of their respective Allowed Texas Tax Claim to demand or assert a right for such treatment.

### N.  Local Texas Tax Authorities

Certain taxing entities in the State of Texas, consisting of Allen, Allen ISD, Bexar County, Dallas County, El Paso, Fort Bend County WCID #2, Fort Bend County, Frisco, Galveston County, Harris County, Lewisville ISD, Lucas, Montgomery County, Parker CAD, Tarrant County and Texas City ISD ( together the "Local Texas Tax Authorities"), have asserted claims in the aggregate approximate amount of $45,000 (the "Texas Tax Claims").  Notwithstanding any other provision of the Plan or this Confirmation Order, to the extent any Texas Tax Claim is an Allowed Claim, the applicable Local Texas Tax Authority holding such Allowed Claim shall receive the treatment described in this paragraph on account of such Allowed Claim.  The Local Texas Tax Authorities shall receive interest from the Petition Date until payment in full at the state statutory rate pursuant to 11 U.S.C. Sections 506(b), 511 and 1129. However, the Local Texas Tax Authorities agree to accept payment of the 2020 taxes without any additional interest if paid on or before February 1, 2021.  All parties' rights with respect to any such Claims for interest are reserved in accordance with the paragraph below. The Debtor shall commence equal monthly payments to the holder of such Allowed Claim on the final day of the first full quarter after the Effective Date. These payments will continue over a period of months calculated to pay such Allowed Claim in full no later than the fifth (5th) anniversary of the Petition Date.  In the event of a default under the plan, the Local Texas Tax Authorities shall send notice of default to the Debtor/Reorganized Debtor by both overnight mail and electronic mail, and the Debtor shall have 15 days from the date of such notice to cure said default.  In the event of failure to cure the default timely, the Local Texas Tax Authorities shall be entitled to pursue collection of all amounts owed pursuant to applicable non-bankruptcy law without further recourse to the Bankruptcy Court.  The Tax Authorities shall only be required to send two notices of default; upon a third event of default, they may proceed to collect all amounts owed pursuant to applicable non-bankruptcy law without further notice.  Failure to pay any post-petition ad valorem taxes prior to their becoming

ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
DEBTOR: INGENU, INC.                                                     CASE NO.: 20-03779-LT11

delinquent under Texas law shall constitute an event of default under the Plan. Any such Local Texas Tax Authority holding an Allowed Texas Tax Claims shall retain its Liens securing such Allowed Claim, to the extent such liens are valid and enforceable, against the applicable property of the Debtor until such time as such Allowed Claim is paid in full. In the event that the Debtors abandon any property securing an Allowed Texas Tax Claim, the Debtor shall provide notice of such abandonment and of the occurrence of the Effective Date to the affected Texas Taxing Entity holding such Claim. Nothing in the Plan or this Confirmation Order shall be deemed as an admission as to the validity, priority or amount of any Lien or Claim asserted by the Certain Texas Taxing Entities and all parties' rights with respect to thereto are fully reserved and the foregoing treatment shall not entitle any creditor other than the Local Texas Tax Authorities on account of their respective Allowed Texas Tax Claim to demand or assert a right for such treatment."

      O.    **<u>Stipulation with United States Trustee</u>**

      The Stipulation re Objection Raised by United States Trustee to Debtor's Proposed Chapter 11 Plan of Reorganization (ECF 162) is approved and the parenthetical in paragraph 13.3(a) of the Plan shall be and hereby is deemed revised as follows: (other than the right to enforce obligations under or reserved by the Plan and the contracts, instruments, releases, agreements and documents delivered thereunder and the right to contest Professional Fee Claims, <u>and claims for gross negligence or willful misconduct</u>).

      **IT IS SO ORDERED.**


APPROVED AS TO FORM:

FARELLA BRAUN + MARTEL LLP

*/s/ Gary M. Kaplan*
Gary M. Kaplan
Attorneys for Creditor and Party In Interest
TRILLIANT NETWORKS (CANADA) INC.

Signed by Judge Laura Stuart Taylor December 23, 2020